**Shirley GARNETT, on behalf of herself and all others similarly situated, Plaintiff,**

v.

**ADT LLC, and Does 1 through 50, inclusive, Defendants.**

**Civ. No. 2:14–2851 WBS DAD.**

United States District Court, E.D. California.

Signed Feb. 10, 2015.

Robin G. Workman, Aviva N. Roller, Workman Law Firm, PC, San Francisco, CA, for Plaintiff.

Linda Claxton, Ogletree Deakins Nash Smoak & Stewart, P.C., Los Angeles, CA, Christopher M. Ahearn, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., San Francisco, CA, for Defendants.

### MEMORANDUM AND ORDER RE: MOTION TO REMAND

WILLIAM B. SHUBB, District Judge.

Plaintiff Shirley Garnett brought this putative class action against defendant ADT LLC, asserting claims arising out of the alleged failure to reimburse her and others for work-related expenses and failure to provide wage statements required by California law. Defendant removed the action from San Joaquin County Superior Court under the Class Action Fairness Act of 2005. 28 U.S.C. §§ 1332(d), 1446. Plaintiff now moves to remand pursuant to 28 U.S.C. § 1447(c).

### I. Factual and Procedural History

Plaintiff worked for defendant during the four years preceding this lawsuit. (FAC ¶ 10 (Docket No. 1).) During that time, plaintiff alleges that defendant required her and other employees to use their personal vehicles in the course of performing their jobs without reimbursing them for the expenses they incurred. (Id. ¶¶ 19, 28.) Plaintiff also alleges that defendant failed to provide her and other employees with hard copies of their wage statements, as required by California law. (Id. ¶¶ 15, 23, 28.) Her First Amendment Complaint [1] ("FAC") asserts claims under California Labor Code section 2802, California Business & Professions Code sections 17200 et seq., and California's Private

---

**1.** Plaintiff reportedly amended her Complaint before serving the original Complaint on de-fendant. (See Def.'s Notice of Removal at 2–3.)

Attorneys General Act of 2004, Cal. Lab. Code §§ 2698 *et seq.* (*Id.* ¶¶ 18–29.) As part of plaintiff's third claim, she seeks statutory damages under California Labor Code section 226, which governs the furnishing of wage statements to employees. (*See id.* ¶ 28 (citing Cal. Lab.Code § 226).)

Defendant removed the action to federal court on December 5, 2014, asserting that, based solely on the statutory penalties available under California Labor Code section 226(e), the amount in controversy is approximately $6,794,550. (Def.'s Notice of Removal ¶¶ 15–16 (Docket No. 1).) Defendant originally supported this number with the declaration of Doug Cuellar, a manager employed by defendant to maintain and review human resources data. (*See* Cuellar Decl. (Docket No. 3).) Defendant has since acknowledged a typographical error in Cuellar's declaration misstating the time period that Cuellar used to calculate the number of wage statements issued by defendant. (*See* Def.'s Opp'n at 8–9 (Docket No. 10).) It corrected this error by submitting a new declaration listing the correct dates, this time by HR Workforce Analyst Lori Pencis. (*See* Pencis Decl. (Docket No. 10–1).) Both declarations arrived at the same number. Plaintiff disputes defendant's calculations and maintains that the amount in controversy fails to reach the required $5 million minimum. (Pl.'s Mot. to Remand (Docket No. 8).)

## II. *Discussion*

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district ... where such action is pending." 28 U.S.C. § 1441(a). If "it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

The Class Action Fairness Act of 2005 ("CAFA") grants district courts original jurisdiction over civil class action lawsuits if the parties are minimally diverse and the amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d)(2).

Plaintiff's FAC does not specify a particular amount of alleged damages. In such cases, "the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds [$5 million]." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir.1996). The Supreme Court recently clarified this burden by explaining that "the defendant's amount-in-controversy allegations should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens,* —— U.S. ——, 135 S.Ct. 547, 553, 190 L.Ed.2d 495 (2014). "If the plaintiff contests the defendant's allegations ... both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount in controversy requirement has been satisfied." *Id.* at 553–54. "[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal courts." *Id.* at 554.

### A. *Statutory Damages*

■ The parties' disagreement over the amount in controversy stems from their different interpretations of California Labor Code section 226(e), which provides:

An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand

dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

Cal. Lab.Code § 226(e).

Defendant interprets "subsequent" to mean a pay period that occurs chronologically after the first pay period in which an employer fails to comply with section 226(a). (Def.'s Opp'n at 10–11.) After noting that a one-year statute of limitations applies to plaintiff's wage-statement claim, defendant calculated the amount in controversy using three different penalty rates:

> (1) a set of 1,040 employee wage statements where the number of wage statements for each employee in the relevant period was such (at least 41) that the $4,000 maximum penalty is reached with regard to them; (2) additional "initial" wage statements (total of 1,751) for employees who are not included in the 1,040 putative class members ... because they did not have a sufficient number of wage statements to reach the maximum; and (3) additional "subsequent" wage statements (a total of 25,465) for the individuals included in category (2).

(*Id.* at 9–10.)

Plaintiff argues that this computation overestimates the amount in controversy because "subsequent" has a special meaning within the California Labor Code that triggers heightened statutory penalties only after an employer has learned that its conduct violates the Labor Code. (Pl.'s Mem. at 7–10.) Plaintiff asserts that, if defendant correctly states the number of wage statements issued within the one-year limitation period, the correct amount in controversy is $4,064,800. (*Id.* at 9–10.)

Plaintiff relies principally on *Amaral v. Cintas Corp.*, a California Court of Appeal case that rejected a purely temporal understanding of the term "subsequent" and interpreted its use in California Labor Code sections 210 and 225.5 to require that "the employer has been notified that it is violated a Labor Code provision" before higher penalties are triggered. 163 Cal. App.4th 1157, 1207–09, 78 Cal.Rptr.3d 572 (1st Dist.2008). *Amaral* did not examine section 226(e). However, plaintiff argues that its interpretation applies to the Labor Code generally by pointing to a federal court's application of *Amaral* to California Labor Code section 2699(f)(2), *see Chen v. Morgan Stanley Smith Barney, LLC*, Civ. No. 8:14–01077 ODW, 2014 WL 4961182, at *2 (C.D.Cal. Oct. 2, 2014), and, in this district, Magistrate Judge Thurston's application of *Amaral* to section 226(e). *See Perez v. WinnCompanies, Inc.*, Civ. No. 1:14–01497 LJO, 2014 WL 5823064, at *7 (E.D.Cal. Nov. 10, 2014) (finding that a defendant faced only $50 penalties for each failure to provide an accurate wage statement under section 226(e)).

It is a "well-established canon of statutory interpretation" that the use of different words or terms within a statute demonstrates an intent to convey a different meaning for those words. *Spencer Enterprises, Inc. v. United States*, 345 F.3d 683, 689 (9th Cir.2003) (citing *SEC v. McCarthy*, 322 F.3d 650, 656 (9th Cir.2003)). It is therefore significant that sections 210, 225.5, and 2699 use the term "subsequent" in a different way than section 226(e). The term "subsequent" in those sections modifies the word "violation," so that a defendant faces enhanced penalties "for each *subsequent violation*." [2] The *Amaral*

---

**2.** California Labor Code section 210 states:
(1) For any initial violation, one hundred dollars ($100) for each failure to pay each employee. (2) For each *subsequent violation*, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld.
Cal. Lab.Code § 210(a) (emphasis added).
California Labor Code section 225.5 provides:

court thus reasoned that an initial "violation" could encompass multiple failures to pay an employee under sections 210 and 225.5. *See Amaral,* 163 Cal.App.4th at 1209, 78 Cal.Rptr.3d 572 (noting that "each failure to pay each employee" may have "occurred in an initial violation").

This contrasts with section 226(e)'s use of the term "subsequent" to modify the noun "pay period," so that enhanced penalties apply "per employee for *each violation* in a *subsequent pay period*." Cal. Lab. Code § 226(e) (emphasis added). It is not at all clear that the *Amaral* court would have interpreted this language the same way it interpreted the language of sections 210 and 225.5. In fact, one of the parties in *Amaral* argued that sections 210 and 225.5 should be distinguished from "examples of other statutes that expressly impose penalties 'per pay period,'" *see Amaral,* 163 Cal.App.4th at 1208, 78 Cal. Rptr.3d 572 (citing Cal. Lab.Code § 2699(f)(2)), but the court's opinion leaves ambiguous whether the court agreed with that understanding. Although Judge Thurston applied *Amaral's* approach to section 226(e) in *Perez,* she did so without analyzing the difference in language between the two statutes or discussing the intent behind section 226's penalties. *See Perez,* 2014 WL 5823064, at *7 (E.D.Cal.

Nov. 10, 2014). The court thus finds that opinion of limited persuasive value here.

The *Amaral* court may also have found significant the use of the phrase "[f]or each subsequent violation, *or any willful or intentional violation,* ..." *See* Cal. Lab. Code § 210(a); Cal. Lab.Code § 225.5. This statutory language reinforces *Amaral's* conclusion that a subsequent violation occurs only after an employer gains notice of the Labor Code's requirements, making any post-notice violation a "willful or intentional" one. Notably, section 226(e) does not contain the phrase "willful or intentional violation." Instead, the statute predicates all liability upon a "knowing and intentional failure by an employer to comply with subdivision (a)." Cal. Lab.Code § 226(e). This difference casts more doubt on the application of *Amaral* here.

Having distinguished *Amaral,* and in the absence of controlling authority, the court will interpret the language of section 226(e) according to its plain meaning. Defendant faces a $50 penalty for each violation in an initial pay period, and a $100 penalty per employee for each violation that occurs in a pay period after the initial pay period. Accordingly, the court will accept defendant's estimate of the amount in controversy as approximately $6,794,550,[3] and finds more likely than not that this case exceeds the $5 million minimum required by CAFA.[4]

---

(a) For any initial violation, one hundred dollars ($100) for each failure to pay each employee. (b) For each *subsequent violation,* or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld.
Cal. Lab.Code § 225.5 (emphasis added).
California Labor Code section 2699 provides: If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each *subsequent violation.*

Cal. Lab.Code § 2699(f)(2) (emphasis added).

**3.** Notably, defendant urges the court to reject *Amaral* for purposes of calculating the amount in controversy, but it "reserves the right" to argue that *Amaral* applies on the merits. (Def.'s Opp'n at 10.)

**4.** It is also worth noting that none of these calculations take into account plaintiff's other causes of action. Neither party has addressed potential recovery under plaintiff's other claims, including her claim for failure to reimburse work-related expenses pursuant to California Labor Code section 2802 (FAC ¶¶ 18–20). Presumably, this claim could further increase the amount in controversy.

## B. Attorneys' Fees

Even if the court were to apply the *Amaral* approach and adopt plaintiff's lower estimate of statutory damages under section 226(e), the court must also consider attorneys' fees. "[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir.2007) (considering attorneys' fees for purposes of calculating the amount in controversy for a case asserting violations of California's Labor Code). Section 226(e) provides for "an award of costs and reasonable attorney's fees." Cal. Lab. Code § 226(e). "The reasonableness of attorney's fees, when such fees are unascertainable on the face of the complaint, can be calculated by looking to other attorney's fees awards in similar cases." *Garcia v. ACE Cash Express, Inc.*, Civ. No. 14–0285 DOC, 2014 WL 2468344, at *5 (C.D.Cal. May 30, 2014) (citing *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir.2005)).

Assuming that plaintiff correctly estimates the statutory damages available under section 226(e) as $4,064,800, an attorney award of $935,200—or approximately 23 percent of estimated recovery—would suffice to push this case over CAFA's $5 million requirement. Defendant argues that a reasonable attorneys' fee in this case is 25 percent of total recovery.[5]

(Def.'s Opp'n at 13.) In support, it offers two California cases that included, among other claims, a claim similar to the instant one for failure to provide accurate wage statements. *See Godfrey v. Oakland Port Servs. Corp.*, 230 Cal.App.4th 1267, 1271, 179 Cal.Rptr.3d 498 (1st Dist.2014); *Pellegrino v. Robert Half Int'l, Inc.*, 182 Cal. App.4th 278, 283, 106 Cal.Rptr.3d 265 (4th Dist.2010).

In *Godfrey*, a California Court of Appeal upheld a $487,810.50 award of attorneys' fees in a case where the plaintiff's class was awarded $964,557.80—a fee award of more than 50 percent of total recovery. *See Godfrey*, 230 Cal.App.4th at 1270, 1272, 1288, 179 Cal.Rptr.3d 498. The court in *Pellegrino* employed the "lodestar" method for calculating attorneys' fees from a common fund.[6] *See Pellegrino*, 182 Cal.App.4th at 285–87, 106 Cal. Rptr.3d 265. The court upheld the use of a 1.75 multiplier, ultimately awarding $978,121.98 in attorneys' fees. In common fund cases, the Ninth Circuit as also approved a "benchmark" percentage of 25 percent when considering what percentage of a fund to award in reasonable attorneys' fees. *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 942 (9th Cir.2011).

The cases provided by defendant do not align perfectly with the present action, and therefore, they cannot provide a faultless basis on which to estimate attorneys' fees.

---

5. Defendant has not provided the court with information on plaintiff's counsel's hourly billing rate or estimated the amount of time the case will require. Defendant only offers a percentage estimate based on the total recovery.

6. Common fund cases are distinct from other cases involving an award of attorneys' fees. Ordinarily, the amount of attorneys' fees awarded does not impact the amount of recovery. However, "[u]nder regular common fund procedure, the parties settle for the total amount of the common fund and shift the fund to the court's supervision. The plaintiffs' lawyers then apply to the court for a fee award from the fund." *Staton v. Boeing Co.*, 327 F.3d 938, 969 (9th Cir.2003) "The court then determines the amount of attorney's fees that plaintiffs' counsel may recover from this fund, thereby diminishing the amount of money that ultimately will be distributed to the plaintiff class." *Id.* (quoting *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 563 (7th Cir.1994)).

1338

No two cases are ever perfectly alike. The court must nonetheless do its best to estimate attorneys' fees, and in light of these cases, the court finds that defendant's fee estimation of·25 percent of recovery is a reasonable one. Even from plaintiff's lower calculation of statutory damages ($4,064,800), this equates to a fee of approximately $1,016,200. The total amount in controversy thus exceeds $5 million.

IT IS THEREFORE ORDERED that plaintiff's motion to remand be, and the same hereby is, DENIED.