# United States Court of Appeals
## For the Eighth Circuit
_____

No. 22-3468
_____

Robert B. Leflar

*Plaintiff - Appellee*

v.

Target Corporation

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central
_____

Submitted: November 29, 2022
Filed: January 9, 2023
_____

Before ERICKSON, MELLOY, and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

The district court remanded a consumer class action against Target Corporation to Arkansas state court. Target complains that the court relied on a nonexistent anti-removal presumption and ignored a relevant post-removal declaration. We agree, so we send this case back for a second look.

Robert Leflar bought a laptop with a manufacturer's warranty from Target. As someone who "cares about the substance of product warranties," he was disappointed that he was unable to view the written warranty until after checkout. Left without "pre-sale access to product warranties," Leflar decided to sue.

Except he did not do so just for his own benefit. He filed a class action on behalf of "[a]ll citizens of Arkansas who purchased one or more products from [Target] that cost over $15 and that were subject to a written warranty." His theory was that Target violated the Magnuson-Moss Warranty Act's Pre-Sale Availability Rule by refusing to make the written warranties reasonably available, either by posting them in "close proximity to" products or placing signs nearby informing customers that they could access them upon request. 16 C.F.R. § 702.3; *see* 15 U.S.C. § 2302. He sought only injunctive and declaratory relief.

Rather than remain in state court, Target filed a notice of removal based on the jurisdictional thresholds in the Class Action Fairness Act of 2005: minimal diversity, more than 100 class members, and over $5 million in controversy.[1] *See* 28 U.S.C. § 1332(d). Leflar moved to remand on the ground that the amount in controversy was nowhere near $5 million. The district court agreed, so it remanded the case to state court.

Ordinarily, we have no jurisdiction to review a remand order. *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 85–86 (2014); *see* 28 U.S.C. § 1447(d) (stating the general rule that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise"). But

---

[1]The Magnuson-Moss Warranty Act has different jurisdictional thresholds. *See* 15 U.S.C. § 2310(d)(1), (d)(3). The district court concluded, however, that a class action that satisfies the Class Action Fairness Act's jurisdictional requirements does not need to independently meet those other thresholds. No one challenges this conclusion, so we assume without deciding that it is correct.

Target filed a timely request for permission to appeal, leaving us with a choice about whether to review it. *See* 28 U.S.C. § 1453(c)(1) (creating an exception for class-action remand orders). Based on the "important" and "recur[ring]" issues it presents, which would otherwise "escape meaningful appellate review," we decided to grant the request. *Coll. of Dental Surgeons of P.R. v. Conn. Gen. Life Ins. Co.*, 585 F.3d 33, 39 (1st Cir. 2009); *see Hargett v. RevClaims, LLC*, 854 F.3d 962, 965 (8th Cir. 2017).

## II.

Special diversity-jurisdiction rules apply in class actions. *See* 28 U.S.C. § 1332(d)(2). First, minimal diversity is enough: at least one plaintiff and defendant must be citizens of different states. *Id.* Second, the amount-in-controversy requirement is higher: over $5 million rather than $75,000. *Compare id.* (class actions), *with id.* § 1332(a) (other cases). And third, the proposed class must have at least 100 members. *Id.* § 1332(d)(5)(B). If a class action meets all three requirements, a federal court can exercise jurisdiction over it. *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013).

There is no question that the Class Action Fairness Act opened federal courts to more class-action lawsuits. *See Westerfield v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010) (describing the grant of jurisdiction as "broad"). But remaining in federal court following removal is no sure thing. For starters, if the notice of removal does not "plausibly allege[]" that the case meets each of the jurisdictional requirements, the district court must remand the case right back to state court. *See Pirozzi v. Massage Envy Franchising, LLC*, 938 F.3d 981, 984 (8th Cir. 2017). And even if the notice of removal makes the cut, a jurisdictional challenge can still arise. *See Dart*, 574 U.S. at 88–89. In those circumstances, the removing party bears the burden of showing by a preponderance of the evidence that the case meets each one of the requirements. *See id.* Failure to do so also results in a ticket back to state court.

Courts have become confused, however, about how to evaluate the amount in controversy at each step. At step one, the pleading stage, the test is whether "the notice of removal plausibly alleges" that the case *might* be worth more than $5 million. *Pirozzi*, 938 F.3d at 984. And at step two, following a jurisdictional challenge, the district court must determine if "a fact finder *might* legally conclude" that the value of the case is more than $5 million, not whether the damages "*are* greater than the requisite amount." *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 944 (8th Cir. 2012) (quotation marks omitted). In practice, this means that, if "the notice of removal plausibly alleges," and the evidence shows, that the case *might* be worth more than $5 million (excluding interest and costs), "then [it] belongs in federal court." *See Pirozzi*, 938 F.3d at 984 (quotation marks omitted). In evaluating whether Target has cleared both hurdles, our review is de novo. *Id.*

A.

The district court applied the wrong legal standard. In its view, it was "*required* to resolve all doubts about federal jurisdiction in favor of remand." (Emphasis added). For "mine-run diversity cases," we have cases suggesting exactly that. *Dart*, 574 U.S. at 89; *see Wilkinson v. Shackelford*, 478 F.3d 957, 962–63 (8th Cir. 2007) (applying a resolve-all-doubts-in-favor-of-remand presumption in an ordinary removal case). But for nearly a decade, the law has been clear that the same rule does not apply under the Class Action Fairness Act.[2] *Dart*, 574 U.S. at 89.

The reason is textual. At the pleading stage, 28 U.S.C. § 1446(a) requires only "a short and plain statement of the grounds for removal." A "plausible

---

[2]There is good reason to believe that the anti-removal presumption also has no place in ordinary diversity cases after Congress passed the Federal Courts Jurisdiction and Venue Clarification Act of 2011. *See* Pub. L. No. 112-63, 125 Stat. 758; *see Dart*, 574 U.S. at 88 (discussing how the legislation "clarifie[d] the procedure . . . when a defendant's assertion of the amount in controversy is challenged"). Still, given that this is no ordinary diversity case, we need not decide whether the anti-removal presumption survives today in other types of cases.

allegation," in other words, that the case meets the jurisdictional requirements. *Dart*, 574 U.S. at 89. Nowhere does the text mention an anti-removal presumption, much less a *requirement* "to resolve *all* doubts about federal jurisdiction in favor of remand." Instead, district courts must "accept" the allegations in the notice if they are "made in good faith." *Dart*, 574 U.S. at 87.

The analysis is similar at the evidence-weighing stage, except the removing party bears the burden to establish "by [a] preponderance of the evidence[] that the amount in controversy exceeds" $5 million. *Dart*, 574 U.S. at 88 (quoting 28 U.S.C. § 1446(c)(2)(B)); *see Waters v. Ferrara Candy Co.*, 873 F.3d 633, 635–36 (8th Cir. 2017). "[N]o anti[-]removal presumption" applies. *Dart*, 574 U.S. at 89. Instead, as in any other case, a preponderance-of-the-evidence standard involves a straight-up weighing of the evidence to determine which side has the better of the argument. *See Smith v. United States*, 726 F.2d 428, 430 (8th Cir. 1984) (explaining that a "preponderance of the evidence" means the "greater weight of the evidence").

The nonexistent presumption may well have played a pivotal role in the decision to remand. *See Dart*, 574 U.S. at 91 (describing reliance on the presumption as a "legally erroneous premise"). The district court refused to acknowledge the possibility that Target's sales figures for laptops, televisions, and other accessories might have been enough to "plausibly allege" that the case is worth more than $5 million. *See Raskas v. Johnson & Johnson*, 719 F.3d 884, 887 (8th Cir. 2013) (concluding that sales figures "during the relevant statutory period" were enough to "establish the amount in controversy" in a deceptive-advertising case brought under Missouri law). And in weighing the evidence, it described Target's compliance-cost estimates as unsupported and "[in]sufficient." *See Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (explaining that, after a jurisdictional challenge, "the defendant's showing on the amount in controversy may rely on reasonable assumptions"). Missing here, in other words, was a level playing field.

## B.

The district court then compounded its error by focusing exclusively on the two declarations that accompanied Target's notice of removal. One estimated that Target sold about $1.58 million in laptops to Arkansas consumers over the 5-year period covering its allegedly noncompliant conduct. The other said it sold over $5 million in televisions and accessories during the same timeframe. Neither convinced the court that the amount in controversy exceeded $5 million.

Conspicuously absent, however, was any mention of the post-removal declaration of Kelly Beckmann, Target's lead compliance consultant. She estimated that Target would have to spend over $7.5 million if Leflar wins. The declaration even separated the costs of compliance into individual categories like extra signage, additional training, and the introduction of in-store warranty-retrieval systems.

The district court's failure to consider the Beckmann declaration, Target's central piece of evidence in opposing remand, "effectively denied" the company "the opportunity . . . to establish [its] claim of federal jurisdiction." *Pudlowski v. The St. Louis Rams, LLC*, 829 F.3d 963, 964 (8th Cir. 2016) (per curiam). As we have explained, a "notice of removal d[oes] not need to be accompanied by . . . evidence." *Id.* at 965. Rather, parties can supplement it through post-removal declarations and other evidence. *See id.* at 964–65. The test is simply whether the additional proof "sheds light on the situation [that] existed when the case was removed." *Harmon v. OKI Sys.*, 115 F.3d 477, 479–80 (7th Cir. 1997). The Beckmann declaration does, so the district court should have considered it.

## III.

We accordingly vacate the remand order and return the case to the district court for further consideration.

_____