# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-1381
_____

Nicholas Brunts, individually and on behalf of all others similarly situated

*Plaintiff - Appellee*

v.

Walmart, Inc.

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri – St. Louis
_____

Submitted: May 1, 2023
Filed: May 24, 2023
_____

Before BENTON, MELLOY, and GRASZ, Circuit Judges.
_____

MELLOY, Circuit Judge.

Nicholas Brunts filed a class action lawsuit against Walmart in the Circuit Court for St. Louis County, Missouri. Brunts alleged Walmart engaged in misleading and deceptive marketing practices by selling cough suppressants with dextromethorphan hydrobromide ("DXM") and a "non-drowsy" label. Walmart removed the case to the Eastern District of Missouri, and Brunts moved to have the case remanded to state court. The district court remanded, finding Walmart had not

met the Class Action Fairness Act's jurisdictional requirement of showing the amount in controversy exceeds $5 million. See 28 U.S.C. § 1332(d)(2). We granted Walmart's petition to appeal under 28 U.S.C. § 1453(c). Because we find Walmart has shown the amount in controversy exceeds $5 million, we reverse.

I.

DXM is a common ingredient in cough suppressants. The FDA does not require products containing DXM to include a warning that it "may cause drowsiness." Walmart labels products containing DXM as "non-drowsy."[1] Brunts argues the "non-drowsy" label is misleading because DXM is known to cause drowsiness.

In 2022, Brunts sued Walmart on behalf of a class of Missouri citizens who purchased the products within the previous five years. The lawsuit alleges breach of warranty, breach of implied contract, unjust enrichment, and violation of the Missouri Merchandising Practices Act. Brunts recognizes federal law preempts a suit that requires products with DXM to be labeled with the phrase "may cause drowsiness." Brunts instead argues the inclusion of the "non-drowsy" label is misleading and in violation of Missouri law. The complaint asserts the misleading label caused "class members to suffer injuries, pay[] for falsely labeled products, and enter[] into transactions they otherwise would not have entered into for the consideration paid." The complaint also states, "class members are entitled to legal and equitable relief including damages, costs, attorneys' fees, recission, and/or other relief as deemed appropriate" and "[d]ue to Defendant's illegal conduct, Plaintiffs are entitled to restitution of all funds improperly obtained by Defendants."

Walmart filed a timely motion to remove the case to the Eastern District of Missouri. Brunts subsequently filed a motion to remand the case to state court

---

[1]Products sold by Walmart in Missouri that contain DXM and are labeled as "non-drowsy" are referred to as "the products."

arguing Walmart did not show $5 million is in controversy. Walmart filed a brief in opposition to Brunt's motion and attached a declaration from Viral Shah, a Senior Manager for Regulated Products Development at Walmart. Walmart argued there is more than $5 million in controversy based on three possible remedies identified in the complaint. First, if a fact finder determines plaintiffs would not have bought the products but for the "non-drowsy" label, the court could order Walmart to pay an amount equal to the total amount of product sales during the relevant time period—an amount Shah affirms is over $5 million. Second, if the court enjoins Walmart from selling the products, Shah states Walmart would lose over $5 million in sales nationwide during the development of a new label. Finally, Walmart states that if plaintiffs prevail, attorneys' fees could increase the amount in controversy by as much as 40 percent of any compensatory damages.

The district court found Walmart did not show the amount in controversy is greater than $5 million because Walmart did not provide enough detail to show total sales exceeded $5 million or that plaintiffs could recover the full cost of the sales. The court also concluded injunctive costs were not part of the amount in controversy and, even if injunctive costs were included, the declaration did not describe the expenses in enough detail. Finally, the court found Walmart did not specify the amount of the attorneys' fees with enough detail to be considered.

Walmart filed a petition with this court to appeal under 28 U.S.C. § 1453(c)—a provision that gives the Court of Appeals the discretion to grant permission to appeal an order remanding a class action to state court. We granted Walmart's petition and review the district court's order to remand the class action de novo. Pirozzi v. Massage Envy Franchising, LLC, 938 F.3d 981, 983 (8th Cir. 2019).

II.

A party can remove a class action to federal court if three conditions are met: 1) minimum diversity exists, 2) the proposed class has at least 100 members, and 3) there is more than $5 million in controversy. Leflar v. Target Corp., 57 F.4th 600,

603 (8th Cir. 2023) (citing 28 U.S.C. § 1332). The parties agree the first two conditions are met. The parties disagree on whether there is more than $5 million in controversy.

"When a plaintiff contests the amount in controversy after removal, the party seeking to remove under the Class Action Fairness Act must establish the amount in controversy by a preponderance of the evidence. To establish jurisdiction, the removing party must show that a factfinder might legally conclude that the amount in controversy is greater than the threshold amount. An amount is not 'in controversy' if no factfinder could legally award it." Lizama v. Victoria's Secret Stores, LLC, 36 F.4th 762, 765 (8th Cir. 2022) (citations omitted). There is no presumption against federal jurisdiction in class action cases, and "if 'the notice of removal plausibly alleges,' and the evidence shows, that the case *might* be worth more than $5 million (excluding interest and costs), 'then [it] belongs in federal court.'" Leflar, 57 F.4th at 603 (citations omitted). "A removing defendant can establish federal jurisdiction with 'specific factual allegations . . . combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations.' However, the amount in controversy is not established by a preponderance of the evidence if a court must resort 'to conjecture, speculation, or star gazing.'" Waters v. Ferrara Candy Co., 873 F.3d 633, 636 (8th Cir. 2017) (citations omitted).

We conclude the Shah declaration was sufficient to support a finding that sales exceeded $5 million. "The removing party's 'burden of describing how the controversy exceeds $5 million' constitutes 'a pleading requirement, not a demand for proof. Discovery and trial come later.'" Hartis v. Chicago Title Ins. Co., 694 F.3d 935, 944 (8th Cir. 2012) (citation omitted). "[D]istrict courts must 'accept' the allegations in the notice if they are 'made in good faith.'" Leflar, 57 F.4th at 604 (citations omitted).

The total amount of sales can be a measure of the amount in controversy. Raskas v. Johnson & Johnson, 719 F.3 884, 888 (8th Cir. 2013) (finding "sales figures are sufficient to establish the amount in controversy" in a case involving the

-4-

Missouri Merchandising Practices Act). When a lawsuit questions part of a transaction the "defendant's affidavit detailing the total sales of their [contested product] meets the amount in controversy requirement." Id. at 87.

We share some of the district court's frustration that the declaration merely stated Walmart sold more than $5 million of the product during the relevant time period. The addition of some detail or additional information may have helped to avoid this controversy. In the end, however, we believe the declaration was sufficient particularly when it is very plausible that a company the size of Walmart would have sold more than $5 million in cough suppressants in the state of Missouri over a period of five years.

Brunts additionally argues the complaint's request for relief voluntarily limits any recovery to an amount less than the entire sale price. However, the Supreme Court has held "a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified." Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 593 (2013). Therefore, the standard is not what Brunts argues he will ask for but what a fact finder could legally award. See Faltermeier v. FCA US LLC, 899 F.3d 617, 621 (8th Cir. 2018) ("The Supreme Court explained that precertification damages stipulations could not defeat CAFA-jurisdiction because absent and unbound class members might later enlarge the scope of recovery beyond the stipulated amounts.").

Because we find total sales satisfies the amount in controversy requirement, we need not discuss the inclusion of—or sufficiency of the evidence for—compliance costs or attorneys' fees.

IV.

We reverse the district court's order remanding the case to state court because we find Walmart showed that the amount in controversy exceeds $5 million.

_____